SUSAN MARTIN (AZ #014226)
DANIEL L. BONNETT (AZ #014127)
JENNIFER L. KROLL (AZ #019859)
MARTIN & BONNETT, PLLC
1850 N. Central Avenue, Suite 2010
Phoenix, AZ 85004
(602) 240-6900
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com

Harold Lichten (*pro hac vice*)
Peter Delano (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
pdelando@llrlawc.com
hlichten@llrlaw.com

Michael Freedman (*pro hac vice*)
LICHTEN & LISS-RIORDAN, P.C.
466 Geary Street, Suite 201
San Francisco, CA 94102
(415) 630-2651
mfreedman@llrlaw.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| CHRISTERPHOR ZIGLAR, LEAH CANDELARIA, AND MAURICE MEINTZER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EXPRESS MESSENGER SYSTEMS, INC., a Delaware corporation, d/b/a ONTRAC, ABC Entities 1-20, and John and Jane Does 1-20<br><br>Defendants. | CASE NO. 2: 16-CV-02726-PHX-SRB<br><br>**AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT** |

1.     This is a class and collective action brought on behalf of drivers who provide package delivery services for Defendant Express Messenger Systems, Inc., d/b/a OnTrac ("OnTrac" or "Defendant") in the State of Arizona and neighboring states, and who are classified by OnTrac as independent contractors.  OnTrac contracts with various companies, called Regional Service Providers ("RSPs"), who in turn contract with the drivers who physically deliver packages from OnTrac's distribution center in Phoenix, Arizona to business and residential customers throughout Arizona and neighboring states. OnTrac controls, supervises, and directs the manner in which the drivers perform the package delivery services and benefits from the performance of these services.  The drivers who perform these services, on whose behalf this class and collective action is brought, are improperly classified as independent contractors and thus are denied the protections of state and federal wage and hour laws and other rights and benefits of employees.

2.     Plaintiffs bring collective claims on behalf of a class of similarly situated drivers who have, during the past three years, performed package delivery services for and have been misclassified as independent contractors by OnTrac throughout the state of Arizona and neighboring states, when, in fact, they are non-exempt employees.  OnTrac has violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. by failing to pay its drivers, including Plaintiffs, time and one-half their regular rate for hours worked in excess of 40 hours per week.  OnTrac has also violated the FLSA by failing to pay its drivers, including Plaintiffs, the federal minimum hourly wage for all hours worked.

3.     Plaintiffs also brings this action on behalf of a class of others similarly situated, including all drivers in the state of Arizona who provided package delivery services for OnTrac and who, during the 12-month period immediately preceding the filing of this complaint, had unlawful deductions taken from their pay and were not timely paid all wages due including, but not limited to, the applicable minimum hourly wage established by the Arizona Minimum Wage Law, Ariz. Rev. Stat. § 23-351 et seq.

**JURISDICTION AND VENUE**

1

4.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiffs have brought claims pursuant to the federal Fair Labor Standards Act, 29 U.S.C. § 201 et seq.  The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  Venue is proper in this Court because the events giving rise to this action took place within the district where Defendant does business, maintains a corporate presence, and has substantial contacts.

5.      As provided for under the FLSA, 29 U.S.C. § 216(b), this action is brought by Plaintiffs individually and as a collective action on behalf of all current and former similarly-situated employees of Defendant to recover wages, overtime wages, liquidated damages, attorneys' fees, and other statutory penalties resulting from violations of the FLSA.

6.      As permitted by Federal Rule of Civil Procedure 23, this action is also brought as a class action to recover unpaid and overtime wages, unlawful deductions, treble damages, attorneys' fees and any other damages and/or statutory penalties resulting from violations of the Arizona wage statutes.

## PARTIES

7.      Plaintiff Christerphor Ziglar is an adult resident of Phoenix, Arizona, who provided package delivery services for Defendant OnTrac as a purported independent contractor from December 2015 until OnTrac terminated him on June 6, 2016.

8.      Plaintiff Leah Candelaria is an adult resident of Chandler, Arizona, who has provided package delivery services for Defendant OnTrac as a purported independent contractor at various times between May 2014 to the present.

9.      Plaintiff Maurice Meintzer is an adult resident of Chandler, Arizona, who has provided package delivery services for Defendant OnTrac as a purported independent contractor from May 2014 to the present.

10.     Express Messenger Systems, Inc. ("OnTrac" or "Defendant") is a corporation domiciled in Delaware and registered and conducting business in Arizona under the trade name "OnTrac" which has its principal place of business in Chandler,

Arizona.   OnTrac provides package and parcel delivery services to businesses and individuals. OnTrac employs individuals, including Plaintiffs, who are engaged in interstate commerce and/or in the production of goods for interstate commerce or are engaged in handling, receiving, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce.  OnTrac is an employer covered by the FLSA.

11.   ABC Entities 1-20 and John and Jane Does 1-20 are fictitiously-identified Defendants whose true names and legal capacities are presently unknown.  Leave of Court is requested to substitute the true names of such Defendants when their true identify is discovered.

## FACTS

12.   OnTrac provides regional same-day and overnight package delivery services within Arizona, California, Nevada, Oregon, Washington, Utah, Colorado and Idaho.

13.   In Arizona, OnTrac utilizes more than two hundred delivery drivers, like Plaintiffs, to deliver packages from OnTrac's distribution center, located at 4400 E. Elwood Street in Phoenix, Arizona, to residential and business customers throughout Arizona.

14.   OnTrac subcontracts with Regional Service Providers (RSPs), who contract with the drivers to provide delivery services to or on behalf of OnTrac's customers.  RSPs obtain an exclusive right from OnTrac to operate within a specific area by purchasing that right from OnTrac.  These service areas are established by OnTrac using zip codes.  An RSP that purchases a service area from OnTrac is responsible for delivering all of the packages to OnTrac's customers within the zip code that corresponds to the service area.  Upon information and belief, most RSPs are responsible for thirty(30) or more service areas. Upon information and belief, the RSPs lack their own, physical offices and, instead, operate entirely out of OnTrac's distribution center.

15.   RSPs enter into agreements with drivers, like Plaintiffs, for the drivers to deliver the packages from the OnTrac distribution center to the OnTrac customers in a particular RSP service area.  Although the agreements between drivers and the RSPs state

that the drivers are hired by the RSPs as independent contractors, the economic reality of the arrangement is that the drivers are actually employees of OnTrac. Upon information and belief, OnTrac mandates as a condition of its agreements with RSPs that the RSPs contract with drivers as independent contractors as opposed to employees.

16.     RSPs are used as intermediaries but OnTrac controls and supervises the delivery process. As alleged in more detail below, OnTrac exercises near-total control over the manner in which drivers perform package delivery services.

17.     Because OnTrac completely controls performance of their drivers' duties, the drivers have no opportunity to utilize any managerial skills, let alone to profit from those skills. Drivers are typically forbidden by OnTrac from hiring any other drivers to assist with the completion of their deliveries. To work for OnTrac, drivers need not have any special skills. The delivery of packages, the only service provided by the drivers, is the sole and central purpose of OnTrac's business and OnTrac cannot make deliveries without the drivers. As a result, the economic realities of the drivers' relationships with OnTrac make clear that the drivers are OnTrac's employees, not independent contractors for the RSPs.

18.     Drivers are compensated on a per address basis, meaning they receive a flat rate for every address to which they deliver one or more packages. Drivers only receive payment for a delivery if OnTrac deems that the delivery has been completed.

19.     OnTrac has the power to terminate any driver for any reason by instructing an RSP to end its relationship with a driver. If OnTrac terminates a driver, OnTrac prohibits the driver from being rehired by a different RSP. Additionally, OnTrac can, for any reason, prevent an RSP from hiring a driver in the first place.

20.     Though the drivers' contracts with RSPs state that drivers are permitted to work simultaneously for multiple RSPs and/or for delivery companies other than OnTrac, in practice, OnTrac forbids drivers from working simultaneously for more than one RSP or for another delivery company. OnTrac enforces this policy by terminating or suspending or threatening to terminate or suspend drivers who work simultaneously for more than one

AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

RSP or for another delivery company.

21.     Additionally, though drivers' contracts with RSPs permit the drivers to hire others to share or cover their routes, in practice, OnTrac forbids drivers from subcontracting with other additional drivers to deliver packages for them or assist in the delivery process. OnTrac enforces this policy by terminating or suspending or threatening to terminate or suspend drivers who attempt to subcontract with additional drivers to share or cover their routes.

22.     Upon information and belief, OnTrac also requires that drivers are responsible for covering their routes on all days for which the route is served. Upon information and belief, most routes are serviced six or seven days per week. This requirement that drivers cover their routes at all times, combined with the prohibition on drivers hiring other drivers to share or cover their routes, means that drivers frequently work six or seven days in a week and, in reality, have no time to engage in other work.

23.     Drivers are not expressly required by their contracts with RSPs to wear an OnTrac uniform. Instead, they are provided with a choice between (a) purchasing and wearing an OnTrac shirt and hat in exchange for OnTrac paying the driver a nominal clothing fee (approximately $5.00 per day) or (b) not wearing OnTrac clothing. In practice, however, OnTrac terminates or suspends and has terminated and suspended drivers for failing to comply with verbal uniform requirements, which consists of requiring drivers to wear an OnTrac shirt and hat, black shoes, and beige pants.

24.     OnTrac specifies the type of vehicle that the drivers are permitted to use. Drivers cannot use any other type of vehicle to deliver packages. OnTrac has the discretion to terminate or suspend and, on information and belief, has terminated and suspended drivers for using an unapproved vehicle to deliver packages. Drivers who provide their own vehicles must pay for gas, maintenance, and all other expenses necessary to operate the vehicles.

25.     As a condition of becoming a driver, OnTrac requires that all drivers maintain certain levels of commercial insurance coverage and that drivers name OnTrac as

AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

an additional insured on the policy.

26.     All drivers must have a special scanner in order to perform deliveries for OnTrac.  Upon information and belief, RSPs lease the scanners from OnTrac.  Upon information and belief, OnTrac deducts from each drivers' bi-weekly paycheck an amount of money labeled as a "courier fee."  Upon information and belief, this courier fee includes, among other things, a charge to the drivers for use of the OnTrac scanners.  Upon information and belief, the "courier fee" ranges from approximately $45 to $75 every two weeks, depending on how much money a driver earns during the same pay period.

27.     OnTrac controls when and how drivers deliver packages to customers.  Each day, drivers must arrive at the OnTrac distribution center.  Upon arrival at the OnTrac distribution center, the drivers report to their respective RSPs within the OnTrac facility.  The RSPs inform the driver of the routes they will cover for the day.  These daily routes themselves are assembled by OnTrac, not the RSPs.  Each route includes mandatory time windows, set by OnTrac, during which drivers are required to deliver specific packages, thereby requiring that the drivers arrive at the OnTrac facility in time to meet OnTrac's assigned delivery schedule and continue working until all deliveries are completed within the mandated time window.  Drivers do not have any control over which route they are assigned or the time windows during which they must make their deliveries.

28.     Sometimes, when drivers arrive at the OnTrac distribution center at the time specified by OnTrac, they are informed by OnTrac that there are no packages for them to deliver.  OnTrac and its processing of packages is solely responsible for these delays in the readiness of packages for delivery.  When these delays occur, OnTrac requires that the drivers wait at the distribution center until the packages are ready to be delivered.  Sometimes, drivers must wait many hours before they are assigned a route.  OnTrac has the discretion to terminate or suspend and, on information and belief, has terminated and suspended drivers for refusing to wait at the distribution center until they are assigned a delivery route or packages for delivery.

29.     After they are assigned a route, the drivers are required by OnTrac to load

AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

their vehicles with the packages for delivery. The packages for each route are pre-sorted by OnTrac on palettes. Once drivers finish loading their vehicle, they proceed to the OnTrac office (located within the distribution center), where OnTrac staff provide the drivers with a delivery manifest prepared by OnTrac. The delivery manifest sets forth the drivers' name and OnTrac ID number, all deliveries for which the driver is responsible that day, and the time frame within which each package must be delivered.

30.     Drivers then leave the distribution center to deliver packages. While in the field, OnTrac continues to exercise significant control over the drivers. OnTrac dispatchers call drivers directly to provide specific instructions regarding how and when to deliver packages including, but not limited to, instructing drivers when an OnTrac customer wants the delivery window shifted to an earlier or later time, providing specific instructions regarding where to leave a package at a delivery location, and monitoring the drivers' delivery times. OnTrac has the discretion to terminate or suspend and, on information and belief, has terminated and suspended drivers for failing to follow instructions provided by the OnTrac dispatchers. For example, Plaintiff Ziglar was threatened with termination by an OnTrac dispatcher when he declined, because of safety concerns, to deliver a package into a customer's basement, as he had been instructed to do by the dispatcher.

31.     In addition, OnTrac adds and cancels deliveries from a driver's manifest after the driver has left the distribution center. When deliveries are added to the manifest, the drivers have no choice but to accept and complete these additional deliveries, which require the driver to return to the distribution center or some other location to pick up the package. OnTrac has the discretion to terminate or suspend and, on information and belief, has terminated and suspended drivers for failing to deliver packages added to the drivers' manifest after departing the distribution center to begin their deliveries. When deliveries are cancelled, the drivers do not receive any compensation for those packages they are transporting.

32.     OnTrac also instructs drivers to pick up packages for delivery from customers within the drivers' delivery areas. OnTrac has the discretion to terminate or

7

suspend and, on information and belief, has terminated and suspended drivers for failing to pick up packages as instructed by the OnTrac dispatchers.

33.     While drivers are out delivering packages, OnTrac dispatchers track the drivers' locations using the GPS in the OnTrac scanners.  OnTrac dispatchers contact drivers directly or indirectly through RSPs to complain if the drivers appear to be departing from the prescribed route for delivering the packages.  OnTrac has the discretion to terminate or suspend and, on information and belief, has terminated and suspended drivers for departing from the prescribed route for delivering packages.  Accordingly, drivers are unable to choose the route to take to deliver their assigned packages.

34.     OnTrac has the discretion to terminate or suspend and, on information and belief, has terminated and suspended drivers for failing to deliver packages within the time window set forth in the delivery manifests prepared and provided by OnTrac to drivers.

35.     OnTrac requires that all drivers "clear" their route before they are free to stop working for the day.  A route is not considered "cleared" unless (a) all packages on the drivers' manifest have been deemed delivered or undeliverable and, if applicable, (b) any undeliverable packages have been returned to the OnTrac distribution center and unloaded by the driver and (c) any packages picked up during the day have been delivered to the OnTrac distribution center and unloaded by the driver.

36.     OnTrac, not the RSPs, determines whether the drivers' route has been cleared.  If OnTrac determines that the route has not been cleared, OnTrac requires drivers to remedy whatever issue is preventing the route from being cleared.  OnTrac has the discretion to terminate or suspend and, on information and belief, has terminated and suspended drivers for failing to clear their routes or failing to remedy issues that have prevented the route from being cleared.

37.     By way of example, on a number of occasions, Plaintiff Ziglar called OnTrac to clear his route after delivering all of the packages that he had loaded into his van.  He was informed by OnTrac that he still had one or more packages to deliver and that his route was not clear.  Even though the packages had not been included on Plaintiff Ziglar's palette

in the morning (and therefore had not been loaded into his truck), OnTrac required Plaintiff Ziglar to return to the distribution center, locate and load the packages, and return to the field to deliver them.

38.    Upon information and belief, OnTrac frequently unilaterally determines that a driver, for various reasons, including, but not limited to, failing to meet a delivery window or failing to comply with delivery instructions, will not be compensated for the delivery of a package to an address, even though the driver physically delivered the package to the address.  When this occurs, OnTrac deducts the compensation for the delivery from the driver's paycheck.

39.    Though the length of each driver's day can vary, drivers typically work more than 8 hours per day from the time they arrive at the OnTrac distribution center until OnTrac confirms their route is clear.  Upon information and belief, drivers often work 12 or more hours from the time they arrive at the OnTrac distribution center until OnTrac confirms their route is clear.

40.    Drivers, including Plaintiffs, typically work more than 40 hours per week while providing services for OnTrac.  However, drivers are never provided with time and one-half their regular rate of pay for hours worked greater than 40 hours in a work week. Plaintiff Ziglar frequently worked 6 or 7 days in a week for 8 or more hours per day. Consequently, he worked more than 40 hours in one week delivering packages for OnTrac. However, he only was paid his ordinary per delivery rate and was never paid any overtime pay. Plaintiff Candelaria has frequently worked 6 to 7 days in a week for 8 hours or more per day.  Consequently, she regularly worked more than 40 hours in one week delivering packages for OnTrac.  Likewise, Plaintiff Meintzer has frequently worked 6 to 7 days in a week for 8 or more hours per day.  Consequently, he regularly worked more than 40 hours in one week delivering packages for OnTrac.

41.    Drivers, including Plaintiffs, frequently are not paid for all hours worked at an hourly rate at or in excess of the minimum wage rates established by the FLSA, 29 U.S.C. § 206, and its implementing regulations, and the Arizona Minimum Wage Statute,

Ariz. Rev. Stat. § 23-363, and its implementing regulations.  In many weeks, the payment that the drivers, including Plaintiffs, receive for performing delivery services, divided by the number of hours the drivers had performed those services has resulted and will continue to result in an hourly rate of pay below the relevant federal and Arizona minimum wages.

42.   Moreover, OnTrac, by misclassifying drivers as independent contractors, forces all drivers to bear all of the costs of performing delivery services, including, but not limited to, gasoline, tolls, vehicle maintenance (for those who provide their own vehicles), and insurance.  Upon information and belief, when these expenses are taken into account, OnTrac fails to pay an hourly rate of pay to drivers, including Plaintiffs, equal to or greater than the applicable federal and Arizona minimum wages.  See 29 C.F.R. § 531.35.

## CLASS AND COLLECTIVE ACTION ALLEGATIONS

43.   Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all drivers who delivered packages for Defendant in Arizona and have been designated as "independent contractors" during or at any time following the 12-month period preceding the filing of this complaint.

44.   Plaintiffs and other class members have uniformly been misclassified as independent contractors.

45.   The members of the class are so numerous that joinder of all class members is impracticable.

46.   Common questions of law and fact exist as to members of the class who have been misclassified as independent contractors.  Among the questions of law and fact that are common to these drivers are:

      a.    Whether class members are employees of OnTrac;

      b.    Whether OnTrac failed to properly pay drivers an hourly rate equal to or greater the Arizona minimum wage then in effect;

      c.    Whether Defendant's failure to pay wages violates state and common law;

      d.    Whether drivers are entitled to a declaratory judgment and other

10

equitable and legal relief for Defendant's failure to classify and treat drivers as employees and not as independent contractors;

e.      Whether Defendant was unjustly enriched by the acts and omissions complained of herein;

f.      Whether Defendant made unlawful deductions from Plaintiffs' wages or unlawfully required drivers to bear Defendant's business expenses for vehicles, equipment, gas, insurance, and other costs and expenses of the employer's business;

g.      Whether Defendant wrongfully required Plaintiffs to expend money on Defendant's behalf;

h.      Whether any contracts or agreement OnTrac requires drivers to sign are unconscionable in whole or in part;

i.      Whether such contracts are void and/or voidable in whole or in part; and

j.      The nature and extent of Class and any subclass injury and the appropriate measure of damages for the Classes.

47.     The named Plaintiffs are members of the class, who suffered damages as a result of Defendant's conduct and actions alleged herein.

48.     The named Plaintiffs' claims are typical of the claims of the class, and the named Plaintiffs have the same interests as the other members of the class.

49.     The named Plaintiffs will fairly and adequately represent and protect the interests of the class.  The named Plaintiffs have retained able counsel experienced in class action litigation.  The interests of the named Plaintiffs are coincident with, and not antagonistic to, the interests of the other class members.

50.     The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

51.     A class action is superior to other available methods for the fair and efficient

11

adjudication of this controversy because joinder of all class members is impractical. Moreover, since the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation makes it practically impossible for members of the class individually to redress the wrongs done to them.  The class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitive litigation.  There will be no difficulty in the management of this action as a class action.

52.     Plaintiffs also bring this case as a collective action under 29 U.S.C § 216(b) on behalf of any drivers who delivered packages for OnTrac within the last three years who may choose to "opt in" to this case.

53.     Plaintiffs are similarly situated to all other drivers who delivered packages for OnTrac, and there is a group of similarly situated employees who were subject to OnTrac's common policies and who are entitled to notice of this action under 29 U.S.C § 216(b).

**COUNT I**

**(VIOLATION OF FAIR LABOR STANDARDS ACT (FLSA), 29 U.S.C. § 201 <u>ET SEQ.</u> – OVERTIME)**

54.     Plaintiffs reallege and incorporate by reference all allegations in all paragraphs as if fully set forth herein.

55.     The FLSA, 29 U.S.C. § 207(a)(2) provides in relevant part:
no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

56.     Plaintiffs and Class Members are entitled to be paid one and one-half times their regular rate of pay for all hours worked in excess of forty hours in a regular workweek.

57.     By the acts and omissions complained of above, including, <u>inter alia</u>, by failing to pay overtime wages for work in excess of 40 hours per week, Defendant has

violated the FLSA.

58.     Defendant's violations of the FLSA were willful and accordingly, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

59.     Each improperly paid Plaintiffs and Class Member, who performed or continues to perform services for Defendant for any time during the three years preceding this lawsuit, is entitled to notification of the pendency of this action and of his/her right to consent to becoming a party to this action.  Notice should be sent to all Class Members, as defined above, pursuant to 29 U.S.C. § 216(b).

60.     Defendant has intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA.

61.     Plaintiffs and Class Members have been harmed and suffered damages by being denied overtime pay in accordance with the FLSA, plus incurred costs and reasonable attorneys' fees.

62.     As a result of Defendant's unlawful and willful acts and violations of the FLSA, Plaintiffs and Class Members have been damaged and pursuant to 29 U.S.C. § 216(b) are entitled to recovery of overtime wages, liquidated damages in an amount equal to the wages they are owed as unpaid overtime, prejudgment interest, attorneys' fees, costs and other compensation, declaratory and injunctive relief.

## COUNT II

### (VIOLATION OF FLSA, 29 U.S.C. § 201 ET SEQ. – MINIMUM WAGE)

63.     Plaintiffs reallege and incorporate by reference all allegations in all paragraphs as if fully set forth herein.

64.     The FLSA, 29 U.S.C. § 206 provides in relevant part:
Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:

(1) except as otherwise provided in this section, not less than--

(A) $5.85 an hour, beginning on the 60th day after May 25, 2007;

(B) $6.55 an hour, beginning 12 months after that 60th day; and

(C) $7.25 an hour, beginning 24 months after that 60th day;

65.     Plaintiffs and Class Members are entitled to be paid in an amount at least equal to the applicable minimum wage.

66.     By the acts and omissions complained of above, including, _inter alia_, by failing to pay minimum wages, Defendant has violated the FLSA.

67.     Defendant's violations of the FLSA were willful and accordingly, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

68.     Each improperly paid Plaintiffs and Class Members, who performed or continues to perform services for Defendant for any time during the three years preceding this lawsuit, is entitled to notification of the pendency of this action and of his/her right to consent to becoming a party to this action.  Notice should be sent to all Class Members, as defined above, pursuant to 29 U.S.C. § 216(b).

69.     Defendant has intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA.

70.     Plaintiffs and Class Members have been harmed and suffered damages by being denied minimum wages in accordance with the FLSA, plus incurred costs and reasonable attorneys' fees.

71.     As a result of Defendant's unlawful acts and violations of the FLSA, Plaintiffs and Class Members have been damaged and pursuant to 29 U.S.C. § 216(b) are entitled to recovery of minimum wages, liquidated damages in an amount equal to the minimum wages they are owed, prejudgment interest, attorneys' fees, costs and other compensation, declaratory and injunctive relief.

### COUNT III

### (VIOLATIONS OF ARIZONA WAGE LAWS, ARIZ. REV. STAT. § 23-351 ET SEQ.)

72.     Plaintiffs reallege and incorporate by reference all allegations in all paragraphs as if fully set forth herein.

73.     Ariz. Rev. Stat.  § 23-351 provides in relevant part:

14

A. Each employer in this State shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees . . .

\*\*\*

C.  Each employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employee up to such date, except

\*\*\*

(3) Overtime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period.

74.    Ariz. Rev. Stat. § 23-352 provides in relevant part:
No employer may withhold or divert any portion of an employee's wages unless one of the following applies:

1.  The employer is required or empowered to do so by state or federal law.

2.   The employer has prior written authorization from the employee. An employer shall not withhold wages under a written authorization from the employee past the date specified by the employee in a written revocation of the authorization, unless the withholding is to resolve a debt or obligation to the employer or a court orders otherwise.

3.  There is a reasonable good faith dispute as to the amount of wages due, including the amount of any counterclaim or any claim of debt, reimbursement, recoupment or set-off asserted by the employer against the employee.

75.    Ariz. Rev. Stat. § 23-363 provides, in relevant part:
A.  Employers shall pay employees no less than the minimum wage, which shall be six dollars and seventy-five cents ($6.75) an hour beginning January 1, 2007.

B.  The minimum wage shall be increased shall be increased on January 1, 2008 and on January 1 of successive years by the increase in the cost of living. …

76.    Ariz. Rev. Stat. § 23-355(A) provides in relevant part:
if an employer, in violation of this chapter, fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages.

77.    The Arizona minimum hourly wage in 2015 was $8.05 per hour and currently remains at $8.05 per hour for 2016.

78.    By virtue of the acts and omissions alleged herein, including failing to pay all wages due to Plaintiffs and Class Members, including minimum wages and overtime

wages and by improperly deducting portions of Plaintiffs' and Class Members' wages without authorization, Defendant has violated Arizona's Wage Laws.

79.     As a result of Defendant's violations of Ariz. Rev. Stat. § 23-351 <u>et seq.</u>, Plaintiffs and Class Members have been harmed, have suffered substantial losses and have been deprived of compensation to which they were entitled and are entitled to an award of the unpaid wages including the amounts that were unlawfully deducted, with prejudgment interest thereon, and treble the amount of such wages, together with attorneys' fees and costs.

**COUNT IV**

**(RESTITUTION/UNJUST ENRICHMENT)**

80.     Plaintiffs reallege and incorporate by reference all allegations in all paragraphs as if fully set forth herein.

81.     Defendant has been unjustly enriched by the work performed by Plaintiffs and Class Members without payment of the lawfully earned compensation for the work they have performed.

82.     Defendant has been unjustly enriched by the charge-backs and deductions made from the Plaintiffs and Class Members pay.

83.     Plaintiffs are entitled to restitution and/or damages in <u>quantum meruit</u> for the value of Defendant's unconscionable contracts conferred upon Defendant together with any profit thereon and prejudgment interest.

84.     Plaintiffs are entitled to restitution for all of Defendant's costs or fees that have been levied upon the Plaintiffs and Class Members, including charge-backs, weekly deductions, fuel expenses, vehicle maintenance, check processing fees, insurance fees, courier fees, and electronic device fees together with any profit thereon and prejudgment interest.

**COUNT V**

**(DECLARATORY JUDGMENT, ARIZ.REV. STAT. § 12-1831, <u>ET SEQ.</u>)**

85.     Plaintiffs reallege and incorporate by reference all allegations in all

AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

paragraphs as if fully set forth herein.

86.     Ariz. Rev. Stat. §12-1831 provides:
Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

87.     Plaintiffs and Class Members are entitled to a declaration that their status is that of "employees" of Defendant OnTrac.

88.     By virtue of the acts and omissions alleged herein and their status as employees, Plaintiffs and Class Members are entitled to a determination of the rights and benefits of their employment including, but not limited to, payment by the Defendant of the employer portion of federal and state taxes and mandatory coverages including workers' compensation coverage, rights to protections and benefits under all federal and state laws applicable to employees and to all benefits and coverages under all benefit plans and coverages made available to OnTrac employees together with all other appropriate equitable, injunctive and make whole relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek the following relief on behalf of themselves and other members of the class and collective:

a.  A declaration that Plaintiffs and Class Members are and have been employees of Defendant and have been misclassified as independent contractors;

b.  Permission to send notice pursuant to Section 216(b) to individuals who performed or are performing package delivery services for OnTrac in the State of Arizona and neighboring states, were classified as independent contractors, and have not been paid overtime for hours greater than forty (40) worked in a week and/or have not been paid at least the applicable minimum wage for all hours worked, and overtime pay at the rate of one and one-half times the applicable hourly rate of pay to opt-in to this action, pursuant to § 216(b) of the

17

FLSA;

c.  The certification of a Rule 23 class of all individuals who performed or are performing package delivery services for OnTrac in the state of Arizona, were misclassified as independent contractors, and have not been paid minimum wage for all hours worked pursuant to the Arizona Minimum Wage Law, Ariz. Rev. Stat. § 23-363;

d.  The certification of a Rule 23 class of all individuals who performed or are performing package delivery services for OnTrac in the state of Arizona, were misclassified as independent contractors, and have had amounts unlawfully deducted from their wages in violation of Ariz. Rev. Stat. § 23-352;

e.  All damages to which the named Plaintiffs and class members may be entitled;

f.  Liquidated and multiple damages, as allowed by law, including double damage for the FLSA claims and treble damages for the claims under the Arizona Minimum Wage Law;

g.  An injunction ordering OnTrac to cease its violations of federal and state law as described here together with all other appropriate equitable and make-whole relief;

h.  Prejudgment and post-judgment interest on all amounts due;

i.  Attorneys' fees and costs; and

//
//
//
//
//
//
//
//
//

AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

j.   Any other relief to which Plaintiffs and Class Members may be entitled.

Dated this 4th day of November, 2016.

MARTIN & BONNETT, PLLC

By:   /s/ Daniel Bonnett

Susan Martin
Daniel L. Bonnett
Jennifer L. Kroll
MARTIN & BONNETT, PLLC
1850 N. Central Ave. Suite 2010
Phoenix, AZ 85004
(602) 240-6900

Harold Lichten (pro hac vice)
Peter Delano (pro hac vice)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800

Michael Freedman (pro hac vice)
LICHTEN & LISS-RIORDAN, P.C.
466 Geary Street, Suite 201
San Francisco, CA 94102
(415) 630-2651

Attorneys for Plaintiffs

AMENDED COLLECTIVE AND CLASS ACTION COMPLAINT

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY THAT ON November 4, 2016, I electronically transmitted the attached document to the Clerk's Office of the Court for the United States District Court for the District of Arizona by using the CM/ECF System for filing.

Robert G. Hulteng
Damon M. Ott
Danton W. Liang
LITTLER MENDELSON, P.C.
333 Bush Street, 34th Floor
San Francisco, CA  94104

Peter C. Prynkiewicz
LITTLER MENDELSON, P.C.
Camelback Esplanade
2425 East Camelback Road, Suite 900
Phoenix, AZ  85016

s/Kathy Pasley
Legal Assistant